UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                         Plaintiff(s),                  **REPORT AND**
                                                                                 **RECOMMENDATION**
      -against-                                         10-CR-93 (JS) (WDW)

KALYN JONES,
                        Defendant(s).
----------------------------------------------------------X

**WILLIAM D. WALL, United States Magistrate Judge:**

      Before the court, on referral from District Judge Seybert, is a motion by the defendant, Kalyn Jones, to suppress evidence. The motion is opposed by the government. A hearing was held on September 14, 16 and 17. After reviewing the evidence and testimony at the hearing, as well as the papers in support of and in opposition to the motion, I respectfully recommend that the motion be DENIED for the reasons set forth herein.

**BACKGROUND**

      Jones has been indicted and charged with six counts each of robbery and brandishing a firearm during a crime of violence in violation of Title 18, U.S.C. §§1951(a) and 924(c). The indictment arose out of six armed robberies committed in Nassau County between November 21, 2009 and December 23, 2009 by a man wearing a black ski mask and armed with a black semi-automatic handgun. Jones now moves pursuant to Federal Rules of Criminal Procedure 12(b)(3) and 41(f), and the Fourth and Fourteenth Amendments, to suppress any property obtained from him and/or his car at the time of his arrest on December 29, 2009, arguing that he was arrested without probable cause and that he and his car were the subjects of unlawful search and seizure. He also seeks, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fifth, Sixth and Fourteenth Amendments, suppression of any testimony regarding statements allegedly made by

him on December 29 and 30, 2009, if such statements are to be offered as inculpatory evidence at trial, arguing that such statements were involuntary and obtained in violation of his constitutional rights.

According to Jones, on the night of his arrest, he committed no traffic infractions, but was apprehended by the police while he was in a Burger King parking lot.  He alleges that he was handcuffed and not read his Miranda rights, and, after he denied having any weapons or drugs in his car, the car was searched despite the fact that he did not give consent for such a search.  A gun was found in a compartment under the passenger seat, which Jones says was closed, with the floor mat covering it.  He further claims that the lack of Miranda warnings, physical abuse, purposeful separation from his mother, the extreme length of his interrogation, his being moved from place to place during the interrogation, a failure to permit him to sleep or eat, and disregard of his request for an attorney led to an involuntary confession.

The government argues that the license plate of the car Jones was driving on December 29, 2007 had been identified by a witness as having been involved in one of the armed robberies that Jones is now charged with, and that Hempstead Police Officer Williams had learned about the plate at a turnout, saw the plate on the car Jones was in, followed the car, and saw Jones commit two traffic infractions.  Williams called for assistance, blocked Jones's car and ordered Jones out of the car with his gun drawn.  Other officers arrived and saw a second, unnamed individual fleeing the scene from the direction of the passenger side of Jones's car, a Mercedes SUV owned by Jones's mother.  Jones got out of the car and was detained.  The police state that the car had tinted windows that obscured the interior, and that Officer Mike Biehl opened the front passenger door to look for additional occupants.  As he was looking into the car, Officer

Biehl reports, he saw the barrel of a handgun inside a partially opened drawer below the passenger seat. Tr. 14:16-15:5. He retrieved the handgun, which was a loaded, black High Point 9mm semi-automatic. A search of the car also yielded a black neoprene mask. Jones was placed under arrest for possession of a handgun. Tr. 72-19-23. The Nassau County Detectives maintain that he was read his Miranda rights before being interviewed and that he signed several waivers of those rights prior to signing six separate confessions admitting to the commission of the six robberies in the instant indictment, and that there was no inappropriate questioning or other behavior on the part of the police.

Because of the issues of material fact raised by the accounts advanced by Jones and the government, a hearing was held before the undersigned on September 14, 16 & 17, 2010.

## DISCUSSION

**Jones's Stop and Arrest:**

Jones argues that his arrest was without probable cause, in violation of the Fourth Amendment. The government argues that the seizure of Jones was a reasonable investigative detention that comported with the requirements of the Fourth Amendment, and I recommend that finding. The Government explains that Officer Williams' attention was drawn to the car in the first place by the license plate, which had been identified by a witness as being on a car involved in an armed robbery six days earlier. The car itself matched the description of the car implicated in the robbery. Officer Williams followed Jones's car and testified credibly at the hearing that he stopped Jones from leaving the parking lot because he observed Jones committing two separate traffic infractions of failing to signal a turn. Tr. 65:17-18; 76:8-23. The Second Circuit has "held repeatedly that a traffic stop based on a reasonable suspicion of a traffic violation comports

with the Fourth Amendment." *United States v. Stewart,* 551 F. 3d 187, 191 (2d Cir. 2009). Thus, the initial basis for the stop of Jones's car was valid.

Jones argues that even if there was a basis for the initial stop of his vehicle based on traffic infractions, his immediate arrest exceeded the limited intrusion authorized by *Terry v. Ohio*, 392 U.S. 1, 21, (1968). The Government takes the position that Jones was initially detained, and only arrested after the gun was found in his car. The Government argues that it is settled law that a police officer may conduct a brief "investigative detention" by stopping a person to investigate possible criminal behavior, so long as the officer has "'reasonable suspicion' to believe that criminal activity has occurred or is about to occur." *Terry*, 392 U.S. at 23; *see also United States v. Tehrani,* 49 F.3d 54, 58 (2d Cir. 1995). "Reasonable suspicion" arises when law enforcement officers are aware of "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion." *United States v. Brignoni-Ponce,* 422 U.S. 873, 884 (1975). Here, the officers had reasonable suspicion based on the specific, articulable fact that a person driving a car of the same make and model and bearing the same license plate had been reported as having been involved in an armed robbery days earlier. This, coupled with the traffic infractions, was sufficient under the Fourth Amendment to render it reasonable for the police to stop the Mercedes, approach the vehicle, and order the occupants out of the car. *See United States v. Gori,* 230 F.3d 44, 56 (2d Cir. 2000) ("[I]t is well established that officers may ask (or force) a suspect to move as part of a lawful *Terry* stop."); *Pennsylvania v. Mimms,* 434 U.S. 106, 111 (1977) (police officer may order driver out of car during routine *Terry* stop of vehicle).

Further, the fact that the police displayed their guns when ordering Jones out of the car

4

does not convert the stop into an immediate arrest. "There is no hard and fast rule concerning the display of weapons" in investigative stops. *See United States v. Harley*, 682 F.2d 398 (2d Cir. 1982). Instead, the Court looks at the "nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day [and] the reaction of the suspect to the police. . ." *Id.* Applying these factors here leads to the conclusion that the stop and the resulting "investigative detention" were reasonable. The crime connected to the Mercedes being driven by Jones was an armed felony. Based on the information provided to the Hempstead police officers, they reasonably believed that the driver and/or occupants were likely armed. Further, the stop took place after 10:15 at night while Jones was seated in a car with tinted windows that partially obscured the view of the car's interior. Under these circumstances, the conditions of the detention and the subsequent arrest did not violate the Fourth Amendment.

**The Search of Jones's Vehicle:**

Jones argues that at the time his car was searched,[1] he was handcuffed and sitting in the rear of a police car. A search of a vehicle, he contends, can only be justified as incident to a lawful arrest when there is a reasonable belief that "evidence relevant to the crime of arrest might be found in the vehicle." DE[14] at 14 (citing *Arizona v. Gant,* 129 S. Ct. 1710, 1719 (2009)). Thus, he reasons, unless he was immediately arrested for the robberies with which he is now charged - crimes for which, he contends, there was at that time no probable cause for an arrest and for which the Government does not contend that he was arrested- there was no reasonable basis to believe that the vehicle contained evidence relating to the crime of arrest. The

---

[1] Although the Government includes an argument as to the justification of a search of Jones's person, Jones does not raise that issue in his motion, and I do not address it.

5

warrantless search, he argues, would only be justified when there exists a reasonable belief that the arrestee could gain access to the area searched. *Id*. (citing *Gant*, 129 S. Ct. at 1721). Here, he continues, he could not gain access to the vehicle because he was handcuffed and in a police car.

As noted *supra*, I find that at the time the vehicle was searched, Jones's seizure amounted not to an arrest, but to an investigative detention. In deciding whether a search can be conducted in connection with a reasonable investigatory detention, "there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime . . . [T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio,* 392 U.S. 1, 27 (1968). "So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." *Adams v. Williams,* 407 U.S. 143, 146 (1972). Here, I recommend a finding that the information about the vehicle's involvement in an armed robbery, coupled with the officers' reports that someone was seen fleeing the scene (see Tr.17:9-18:9; 83:4-22), the time of day, and the window's tinting, which prevented the officers from adequately seeing inside without opening the doors, made it reasonable for the officers to believe that potential occupants of the vehicle could be armed. Acting on this belief, Officer Biehl opened the passenger door to look for other occupants, whereupon he saw the barrel of the gun in the partially opened drawer. These facts and circumstances render the officer's actions reasonable, and discovery of a partially hidden gun

was valid under the plain view doctrine. *See United States v. Scopo*, 19 F.3d 777 (2d Cir. 1994). Once the officers found the weapon, they had probable cause to believe that the Mercedes contained evidence of a crime and could search it without a warrant. *See United States v. Gaskins,* 364 F.3d 438 (2d Cir. 2004).

**Jones's Statements to the Police:**

Jones seeks suppression of statements he made to the police, based on the Fifth Amendment and Due Process Clause, which forbid the use at trial of a statement that has been obtained from a defendant by coercion. DE[14] (citing *Brown v. Mississippi*, 297 U.S. 278 (1936); *Miranda v. Arizona,* 384 U.S. 436 (1966)). Here, he argues, considering the characteristics of the accused, the conditions of the interrogation, and the conduct of the law enforcement officials, the Government cannot sustain its heavy burden of establishing the voluntariness of Jones's confession. Jones alleges that the circumstances of coercion included a lack of Miranda warnings, physical abuse, purposeful separation from his mother, excessively long interrogation, his movement from place to place, a failure to allow him to sleep or eat, and a disregard of his request to speak to an attorney. He argues further that, even if his statements are considered voluntary, they must be suppressed on the basis of the police officers' failure to advise him of his Miranda rights and to obtain an explicit waiver of those rights, and his repeated expression of a desire for the assistance of an attorney prior to his making the statements.

The Government maintains that the statements were voluntarily made and properly obtained, and that Jones was advised of his Miranda rights, which he voluntarily waived in writing several times, which writings were also voluntary and properly obtained. *See* Gov't Exs. 6 & 7. At the hearing, several officers testified about the various allegations made by Jones, and

I find their testimony that Jones was read his Miranda rights (*see, e.g.*, Testimony of Nassau County Det. J. Fitzgerald, Tr. 143:23-147:22, 152:16-155:16, 159:12-162:19, 188:14-190:8, 221:4-11); was fed (Fitzgerald Testimony, Tr. 168:2-15); was not physically abused and did not complain of any physical injuries (Fitzgerald Testimony, Tr. 195:1124, 230:3-234:17); did not request counsel (Tr. 195:18-20) and acted voluntarily throughout the time he was questioned, (see generally testimony of Detective Fitzgerald) to be credible.

The movant has not met his burden of proof on any of the allegations in his motion and I recommend that the motion be denied.

**OBJECTIONS**

A copy of this Report and Recommendation is being sent to counsel for the parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
October 21, 2010

  /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge